UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRAD BAUMAN, | |
| Plaintiff, | Case No. 1:18-CV-1191 |
| v. | |
| EDWARD BUTOWSKY, et al., | |
| Defendants. | |

**PLAINTIFF BRAD BAUMAN'S OPPOSITION TO
DEFENDANT EDWARD BUTOWSKY'S' MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    ARGUMENT .........................................................................................................3

        A.      This Court Has Personal Jurisdiction Over Butowsky...........................................3

                1.      Legal Standards .................................................................................3

                2.      Butowsky's Acts Outside D.C. Caused Tortious Injury to Bauman in
                        D.C. and the "Plus Factors" are Satisfied. ..................................................5

                        a.      Butowsky's Activities Outside D.C. Caused Bauman Injury in
                                D.C. ..................................................................................6

                        b.      Butowsky's Activities in D.C. Satisfy the Plus Factors.................7

                3.      Butowsky transacted business in D.C.....................................................11

                4.      Alternatively, jurisdictional discovery is warranted................................14

        B.      Bauman Has Pleaded Defamation Against Butowsky .........................................16

                1.      Butowsky made false and defamatory statements about Bauman ...........17

                2.      Butowsky's statements were without privilege to a third party...............23

                3.      Butowsky's statements were made without any basis in fact. .................23

                4.      Butowsky's statements were defamation per se and therefore
                        actionable as a matter of law irrespective of special harm, but even so
                        plaintiff has sufficiently alleged special harm. ........................................23

                5.      Bauman is not a limited purpose public figure. .....................................24

        C.      False Light ...........................................................................................26

IV.     CONCLUSION ....................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Group, LLC,*
975 F. Supp. 2d 1 (D.D.C. 2013) ........................................................................25

*Akbar v. N.Y. Magazine Co.,*
490 F. Supp. 60 (D.D.C. 1980) .............................................................................5

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ...........................................................................................16

*Blumenthal v. Drudge,*
992 F. Supp. 44 (D.D.C. 1998) .............................................................................6

*Butler v. United States,*
481 A.2d 431 (D.C. 1984) ...................................................................................21

*Calder v. Jones,*
465 U.S. 783 (1984) ...........................................................................................13

*Chambers v. Chambers,*
Case No. RWT 11–765, 2011 WL 3512140 (D. Md. Aug. 8, 2011) ................7, 11

*Christensson v. Hogdal,*
199 F.2d 402 (D.C. Cir. 1952) ............................................................................27

*Crane v. Carr,*
814 F.2d 758 (D.C. Cir. 1987) .....................................................................5, 6, 14

*Dooley v. United Techs. Corp.,*
786 F. Supp. 65 (D.C. Cir. 2008) ........................................................................13

*Family Fed'n for World Peace v. Hyun Jin Moon,*
129 A.3d 234 (D.C. 2015) ..................................................................................11

*Heroes, Inc. v. Heroes Found.,*
958 F. Supp. 1 (D.D.C. 1996) .........................................................................12, 13

*Hutchinson v. Proxmire,*
443 U.S. 111 (1979) ...........................................................................................26

*IMark Mktg. Servs., LLC v. Geoplast S.p.A.,*
753 F. Supp. 2d 141 (D.D.C. 2010) ....................................................................4, 5

*Ingber v. Ross*,
479 A.2d 1256 (D.C. 1984) .................................................................................24

*Lewy v. S. Poverty Law Ctr., Inc.*,
723 F. Supp. 2d 116 (D.D.C. 2010) ...................................................................4, 5

*Manifold v. Wolf Coach, Inc.*,
231 F. Supp. 2d 58 (D.D.C. 2002) ............................................................ 4, 12, 14

*Massey Energy Co. v. United Mine Workers*,
No. 2005-3632, 2005 WL 3476771 (Cir. Ct. Fairfax, Cty., Va. Oct. 4, 2005)......14

*Messina v. Fontana*,
260 F. Supp. 2d 173 (D.D.C. 2003) ...................................................................15

*Moldea v. N.Y. Times Co.*,
15 F.3d 1137 (D.C. Cir. 1994) ...........................................................................26

*Mouzavires v. Baxter*,
434 A.2d 988 (D.C. 1981) ..................................................................................12

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) .............................................................................................1

*Ning Ye v. Hong Bao Zhang*,
No. 05-00832, 2006 WL 1102832 (D.D.C. Mar. 31, 2006) ....................................4

*Novack v. Nat'l Hot Rod Ass'n*,
231 A.2d 22 (Md. 1967) ......................................................................................11

*Parnigoni v. St. Columba's Nursery Sch.*,
681 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................22

*Raboya v. Shrybman & Assocs.*,
777 F. Supp. 58 (D.D.C. 1991) .......................................................................23, 24

*Rosen v. Am. Israel Pub. Affairs Comm., Inc.*,
41 A.3d 1250 (D.C. 2012) ...................................................................................17

*Rundquist v. Vapiano SE*,
No. 09–2207 (BAH), 2012 WL 5954706 (D.D.C. Nov. 9, 2012) ....................5, 12

*Schiller v. Viacom, Inc.*,
No. 1:15-CV-22129-UU, 2016 WL 9280239 (S.D. Fla. Apr. 4, 2016) ................25

*Shoppers Food Warehouse v. Moreno*,
746 A.2d 320 (D.C. 2000) ................................................................ 5, 11, 12, 14

*Solers, Inc. v. Doe*,
    977 A.2d 941 (D.C. 2009) ................................................................................... 17

*Sprague v. Am. Bar Ass'n*,
    276 F. Supp. 2d 365 (E.D. Pa. 2003) ................................................................. 22

*Steinberg v. Int'l Criminal Police Org.*,
    672 F.2d 927 (D.C. Cir. 1981) .............................................................. 7, 11, 13

*Swierkiewicz v. Sorema, N.A.*,
    534 U.S. 506 (2002) .......................................................................................... 16

*The Urban Inst. v. FINCON Servs.*,
    681 F. Supp. 2d 41 (D.D.C. 2010) ....................................................................... 4

*United States v. Cefalu*,
    85 F.3d 964 (2d Cir. 1996) ................................................................................ 21

*United States v. Haldeman*,
    559 F.2d 31 (D.C. Cir. 1976) ............................................................................ 21

*United States v. Morrison*,
    98 F.3d 619 (D.C. Cir. 1996) ............................................................................ 20

*Williams v. District of Columbia*,
    9 A.3d 484 (D.C. 2010) ..................................................................................... 22

*Xereas v. Heiss*,
    933 F. Supp. 2d 1 (D.D.C. 2013) ................................................................ 24, 25

*Zimmerman v. Al Jazeera Am., LLC*,
    246 F. Supp. 3d 257 (D.D.C. 2017) .................................................................. 25

**Statutes**

18 U.S.C. § 4 .............................................................................................................. 21

18 U.S.C. § 371 .................................................................................................... 20, 21

18 U.S.C. § 1512(b) .................................................................................................... 20

18 U.S.C. § 1512(d) .................................................................................................... 20

D.C. Code Ann. § 13-423(a)(1) ............................................................................. 4, 11

D.C. Code Ann. § 13-423(a)(4) .......................................................................... 4, 5, 7

D.C. Code § 5-121.05 ................................................................................................ 21

D.C. Code § 13-423(a)(1)..................................................................................................6

D.C. Code § 13-423(a)(4)..................................................................................................5

D.C. Code § 22–722..........................................................................................................20

D.C. Code § 22-722(3)(B)................................................................................................20

D.C. Code § 22-722(3)(C)................................................................................................20

D.C. Code § 22-722(6)......................................................................................................20

D.C. Code § 22-1805a.......................................................................................................19

**Rules**

Fed. R. Civ. P. 11...............................................................................................................9

Fed. R. Civ. P. 12(b)(2)..................................................................................................1, 3

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 16

Fed. R. Civ. P. 15.............................................................................................................27

Plaintiff Brad Bauman respectfully submits this Memorandum of Points and Authorities opposing Defendant Edward Butowsky's Motion to Dismiss (ECF No. 12).

## I.    INTRODUCTION

Plaintiff Bauman sued Defendant Butowsky and others because Butowsky made multiple defamatory statements about Bauman in connection with Bauman's voluntary work with the family of Seth Rich. Seth Rich was murdered during a botched robbery attempt. Butowsky and others leveraged this private tragedy to manufacture public conspiracies and cover-ups. Butowsky hired an unlicensed D.C. private investigator to pursue links between the Rich homicide and the Democratic National Committee (DNC). He fabricated findings from the investigation and used those fabricated findings to try to gin up media controversy over the homicide. And then he accused Bauman of lying about the Rich murder and engaging in criminal acts such as obstruction of justice, and other odious conduct that a reasonable person would understand to imply other crimes.

Courts recognize that although an event may be "newsworthy," that does not automatically mean that it rises to a "public controversy," especially when the "controversy" is invented by the tortfeasor seeking its protection. Courts also recognize that the "media's" action cannot be the basis for asserting heightened protections for the challenged statements – a practice referred to as "bootstrapping." Because Butowsky's actions and statements were driving any "public controversy," Butowsky should not be able to avail himself of the "actual malice" standard contained in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). The allegations, in any event, make clear that the circumstances surrounding these statements, support a finding that they were made with reckless disregard of the truth, as well as personal animus.

Butowsky moves to dismiss under Fed. R. Civ. P. 12(b)(2) and (b)(6), arguing,

respectively, that the Court lacks personal jurisdiction over Butowsky and Bauman has failed to plead defamation. The motion should be denied.

## II.    BACKGROUND

Seth Rich was murdered during a botched burglary in D.C. on July 10, 2016. Compl. ¶ 1. Law enforcement has repeatedly stated that the murder was the result of a botched robbery attempt. *Id.* ¶ 2. In early 2017, Butowsky contacted the Rich family to offer to pay for a D.C.-based investigator to conduct a private investigation within the borders of D.C., the subject of which concerned a murder of a D.C. resident that occurred inside D.C. *Id.* ¶ 30. Butowsky hired Rod Wheeler, an unlicensed D.C. private investigator and Fox News commentator. *Id.* ¶ 10 & n.10. Around the time he hired Wheeler, Butowsky was agitating for Fox News to run a story on the Rich murder. *Id.* ¶ 31.

On May 16, 2017, Fox News published a story that attributed various statements to Wheeler. *Id.* ¶ 33. The headline stated that the "investigator" said that Rich had "contact with WikiLeaks." *Id.* According to the Fox story, Wheeler suggested there was "tangible evidence on [Rich's] laptop that confirms he was talking to WikiLeaks prior to his murder." *Id.* ¶ 34. The article added that Wheeler said "he believes there is a cover up" and that law enforcement on the case have been told to "stand down." The story also said that Wheeler believed the "answer to solving [Rich's] death lies on [his] computer." *Id.* ¶ 35.

Wheeler subsequently stated that he denied the factual bases for the story, *id.* ¶ 37, and had no such direct information, *id.* ¶ 38. Wheeler then sued Butowsky for defaming him, *id.* ¶ 48. Wheeler's complaint alleges that the statements attributed to him in the May 16 Fox News article were invented by Butowsky. *Id.* ¶ 49.

Fox News subsequently retracted the story on May 23, 2017. *Id.* ¶ 43. The Rich family

also disavowed any connection between Seth's murder, the DNC, and WikiLeaks. *Id.* ¶ 46. The Rich family explained that Seth's laptop had been examined by law enforcement and no evidence of links to WikiLeaks had been found. *Id.* ¶ 47. One would think the story would end there. But Butowsky was not done spreading malicious falsehoods. His story having collapsed, Butowsky now turned to manufacturing cover-ups and obstruction of justice.[1]

The very same day as the Fox News retraction and the Rich Family's statements repudiating any connection between Seth and WikiLeaks, Butowsky spoke to World Net Daily, stating Bauman had been "assigned" to the Rich Family by the DNC. *Id.* ¶ 53. Butowsky continued to peddle the lie that Wheeler had uncovered information tying Seth Rich to WikiLeaks and that the Rich Family was delighted with the findings, but changed their tune when Bauman became involved. *Id.* Butowsky stated that Bauman's involvement was "suspicious", that the DNC had "assigned" Bauman to "represent" the Rich Family as part of its efforts to obstruct the murder investigation. *Id.* In other words, Butowsky accused Bauman of being involved in a conspiracy to obstruct justice relating to an ongoing murder investigation.

On August 2, 2017, during an interview with CNN, Butowsky stated that Bauman was responsible for "crafting a lie" about the Seth Rich murder. *Id.* ¶¶73-75.

## III.   ARGUMENT

### A.   This Court Has Personal Jurisdiction Over Butowsky

#### 1.   Legal Standards

When addressing a Rule 12(b)(2) jurisdictional challenge, a plaintiff need only make "a

---

[1] As pointed out in the Complaint, Mr. Butowsky is also being sued separately by the parents and brother of Seth Rich for his actions related to this matter. Compl. ¶ 12 (*Rich v. Butkowsky, et al.*, No. 1:18-cv-00681-RJL (D.D.C.); *Rich, et al. v. Fox News Network, LLC, et al.*, NO. 1:18-cv-02223 (S.D.N.Y)); *see also* Compl. ¶ 11 (noting the investigator tied to the May 16, 2017 Fox News story sued defendant Butowsky)

prima facie showing that the court has personal jurisdiction" over a defendant. *Ning Ye v. Hong Bao Zhang*, No. 05-00832, 2006 WL 1102832, at *1 (D.D.C. Mar. 31, 2006).[2] The court "must resolve any factual discrepancies with regard to the existence of personal jurisdiction in favor of the plaintiff." *Lewy v. S. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 119 (D.D.C. 2010); *see also Manifold v. Wolf Coach, Inc.*, 231 F. Supp. 2d 58, 60 (D.D.C. 2002) ("in evaluating the defendant's motion, the Court will assume all the factual allegations set forth in the complaint, and will construe the complaint liberally in favor of the plaintiff"). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, she may rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as [she] can otherwise obtain.'" *The Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)). Thus, a plaintiff "is not limited to the Complaint's allegations" in opposing a motion to dismiss for lack of personal jurisdiction. *See IMark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 162 (D.D.C. 2010).

A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from, *inter alia*, the following circumstances:

1. When a person "caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia," D.C. Code Ann. § 13-423(a)(4); or

2. when a person "transact[s] any business in the District of Columbia," *id.* § 13-423(a)(1).

The "nexus" requirement in Section 13-423(a)(1) is satisfied "if the claim either arises out of or relates to the nonresident defendant's business activity" as long as there is "some 'discernible

---

[2] Unless otherwise indicated, all internal citations and quotations are omitted.

4

relationship'" between the two. *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 332, 335 (D.C. 2000) (emphasis in original); *see Rundquist v. Vapiano SE*, No. 09–2207 (BAH), 2012 WL 5954706, at *8 (D.D.C. Nov. 9, 2012) ("'This is not a particularly high threshold' and '[a] claim only fails to have a 'discernible relationship' when it is 'unrelated to the acts forming the basis for personal jurisdiction.'").

### 2. Butowsky's Acts Outside D.C. Caused Tortious Injury to Bauman in D.C. and the "Plus Factors" are Satisfied.

Jurisdiction is proper where, as is the case here, a tortious injury within D.C. was caused by a defendant's act outside D.C. and the defendant "had one of three enumerated 'minimum contacts'" with D.C.—he "regularly does or solicits business" in D.C.; he engages in any other persistent course of conduct in D.C.; or he derives substantial income from goods used or consumed, or services rendered in the District. D.C. Code § 13-423(a)(4); *Akbar v. N.Y. Magazine Co.*, 490 F. Supp. 60, 63 (D.D.C. 1980). These so-called "plus factors" are a "safeguard" intended "to ensure that the party being haled into this jurisdiction's courts has more than a 'scant' connection to the forum." *Lewy*, 723 F. Supp. 2d at 123-24. "Thus, a defendant's contacts need not be great to satisfy subsection (a)(4); they need only be sufficient to establish a real connection to the District of Columbia such that a party might expect to be subjected to jurisdiction here." *Id.* at 124. The plus factors are "satisfied by connections considerably less substantial than those it takes to establish general, all-purpose 'doing business'—or 'presence'—based jurisdiction." *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987). Such connections can be sporadic, rather than "continuous" or "systematic,"[3] and need not be close in time to the conduct underlying the tort claims. *See IMark*, 753 F.Supp.2d at 161. Importantly, the "plus factors" need

---

[3] *See also IMark*, 753 F.Supp.2d at 161 n.16 (contrasting jurisdiction pursuant to D.C. Code § 13-423(a)(4) with general jurisdiction, which "in comparison, is 'a high bar' that requires that a defendant maintain 'continuous and systematic' contacts with the forum.").

not be related to the cause of action, but rather are designed to "demonstrate some reasonable connection between the jurisdiction in which the court sits separate from and in addition to the injury caused in the jurisdiction." *Blumenthal v. Drudge*, 992 F. Supp. 44, 54 (D.D.C. 1998); *see Crane*, 814 F.2d at 763 ("unlike the 'transacting business' nexus employed in D.C. Code § 13-423(a)(1), subsection (a)(4) contemplates a connection that may be un related to the claim in suit."). As explained below, Butowsky caused injury to Bauman in D.C., see Section III.B, *infra*, and the plus factors are satisfied as immediately described below.

### a.     Butowsky's Activities Outside D.C. Caused Bauman Injury in D.C.

Butowsky engaged in activity both inside and outside D.C., which resulted in tortious injury to Bauman. The propaganda campaign that eventually swept up Bauman was started by Butowsky when he contacted the Riches to offer to fund the hiring of a D.C.-based investigator to conduct an investigation inside of D.C. concerning the murder of Seth Rich, a D.C. resident inside of D.C. Compl. ¶ 30. Butowsky in fact hired Wheeler, the unlicensed D.C. private investigator, who did, in fact, undertake an investigation of sorts in D.C. *Id.* Then, Butowsky successfully pressured Fox News to run the bogus story on May 16, 2017. Compl. ¶ 31. Butowsky defamed Bauman in an on-the-record statement published by World Net Daily ("WND") on its website. Compl. ¶¶ 52-53. To advance his core storyline of a DNC cover-up, in the World Net Daily article, Butowsky falsely stated that the DNC "assigned" Bauman to represent the Rich family, implied that Bauman muscled the Riches to keep quiet, and stated that the DNC's decision to "assign" Bauman to the Rich family was "extremely suspicious," and that the DNC – and, contextually, by obvious implication Bauman – was engaged in an ongoing "obstruction of the murder investigation" of Seth Rich. . Compl. ¶ 53. The WND was then picked up by InfoWars, further extending Butowsky's defamatory statements. Compl. ¶ 54.

6

Butowsky continued to push his narrative in article published on Big League Politics. Compl. ¶ 72. Butowsky then made defamatory statements in New York Magazine's Daily Intelligencer that continued to state that Bauman was conspiring with others for purposes of "concealing the truth about [Seth] Rich's murder, since [Bauman's] a Democratic communications professional." Compl. ¶ 55.

### b.    Butowsky's Activities in D.C. Satisfy the Plus Factors.

Butowsky has engaged in a "persistent course of conduct" that satisfies the "plus factors" required by Section 13-423(a)(4). Butowsky's D.C. connections include:

- Intentionally and purposefully injecting himself in the middle of Seth's Rich D.C.-based murder (Compl. ¶¶ 26; 30; 31; 35; 49);

- Hiring a D.C.-based unlicensed private investigator to investigate a D.C.-based murder (Compl. ¶¶ 10; 30);

- Coordinating meetings in D.C. leading up to the publication of May 16, 2017 Fox News Article (Compl. ¶ 50);

- Knowingly spreading defamatory statements about an individual, Bauman, who lives and works in D.C. (Compl. ¶¶ 2; 4; 14);

- Accusing Bauman of committing crimes (*e.g.*, obstruction of justice) in D.C. (Compl. ¶¶ 74-75);

- Speaking to individuals who publish in D.C.-based publications. (Compl. ¶ 53); and

- Targeting comments towards Plaintiff in the District of Columbia in an effort to intimidate him from fighting back against Butowsky's lies. (Compl. ¶¶ 1; 4 & n.4; 20.)

The foregoing actions cited in Bauman's complaint more than satisfy Section 13-423(a)(4)'s "persistent course of conduct" rule. *See, e.g., Steinberg v. International Criminal Police Org.*, 672 F.2d 927, 931 (D.C. Cir. 1981) (jurisdiction is proper where defendant attends meetings in D.C. and communicates with a D.C. liaison to whom it "regularly sends information to and receives information"); *Chambers v. Chambers*, Case No. RWT 11–765, 2011 WL

3512140, at *4 (D. Md. Aug. 8, 2011) (jurisdiction proper where defendants "created blogs, posted comments on websites, and sent emails to Maryland residents and towns in an effort to defame Plaintiff").

Butowsky's Motion and associated Declaration urges that "none" of the plus factors "is present in this case." (ECF 12 at 11. Butowsky's claim that he has not "'targeted' any comments to the Plaintiff in the District of Columbia," Butowsky Decl. ¶ 7, is belied by his own emails to Bauman. The table below provides representative examples of communications that Butowsky targeted directly at Bauman while knowing that Bauman resided in D.C. Given this context and the messages in the table below, a jury could obviously infer – indeed, there is no other reasonable interpretation – that Butowsky directed harassing communications towards Bauman in D.C. for the transparent purposes of intimidating Bauman and creating new fabrications (building lies on top of a lies).[4] He even harassed Brad on Thanksgiving by sending him a trolling email at 5:05 P.M., which Butowsky would have known from ordinary experience is a time when most Americans are enjoying time with their families. A note about the emails below: they are all lies and fabrications plainly crafted by Butowsky in an attempt to create a false paper trail suggesting Bauman was communicating with him and meeting with him. Bauman never responded to any emails, and never met with Butowsky.

---

[4] Bauman does not concede the accuracy of any of the representations set forth in Butowsky's emails. Butowsky is a fabulist and a liar. We believe that discovery will reveal that he fabricated the conversations he self-servingly communicated in these emails. Contrary to Butowsky's Aug. 18, 2017 email in the table, we do not believe there is any email from Bauman to Butowsky, as Bauman does not have any records of any emails beings sent to Butowsky on or about August 17 or 18, 2017.

| Date | Emails From Butowsky to Bauman (Typos in Original; Emphases Added) |
|------|-------------------------------------------------------------------|
| 7/12/17 (4:58 P.M.) | Please ask Brad what time I can drop by his office on Tuesday.or Lunch? This is Ed Butowsky my cell is [Phone Number Redacted] |
| 8/17 2017 (8:53 P.M.) | Brad, we are still looking forward to our get together. You never seem to be around.<br><br>Please let me know as soon as possible when you are available. When Joel and Mary Rich told me their " secret" he let me know that you were well informed about what Aaron and Seth had done and he told me you were "hired" by the DNC to keep it a secret from " the world " So much for you and I to catch up on.<br><br>Breakfast , lunch or dinner . Your choice. Have a great night .<br><br>Your buddy,<br>Ed<br><br>Ps.<br>*No need to have an attorney call me. It really doesn't further our needed dialogue*. |
| 8/18/2017 (10:18 P.M.) | I received your email tonight .<br>When can we visit?<br>My friends and I have so so many questions that just keep piling up.<br><br>What's your schedule tomorrow ?<br>Open for lunch ? Or how about brunch on Sunday ?<br><br>You name it.<br><br>*We have so much to catch up on and workout.*<br><br>*Your buddy ,*<br><br>*Ed Butowsky* |
| 9/25/2017 (7:43 P.M.) | **Rule 11 Motion and Exhibits**<br><br>*I look forward to meeting you soon*. Perhaps we can grab lunch this week. We have a lot to discuss<br><br>2 ATTACHMENTS: "Memorandum of Law in Support of Motion for Sanctions.pdf"; and "Rule 11 Declaration and Exhibits_Stamped Version.pdf" |
| 10/22/2017 (3:52 P.M.) | I am in DC for a few days. Which day works for lunch? I am buying . [Phone Number Redacted] |

| 10/24/2017 (11:26 A.M.) | Where do you want to meet for lunch? We have a lot to discuss? [Phone Number Redacted] |
|---|---|
| 11/29/2017 (7:01 PM) | Great news. I will be in Washington on Friday. Lets grab Breakfast<br><br>Does that work for you ?<br><br>***I feel like you are avoiding me ... am I reading things correctly?*** |
| 11/30/2017 [5:05 P.M. on Thanksgiving] | I am here. Want to meet up somewhere? Let's Chat |
| 12/1/2017 (10:08 A.M.) | Brad, lets meet up, Where are you? Is there a Starbucks nearby? |
| 12/12/2017 (9:25 P.M.) | Brad, it's been awhile. ***Please text me your home address. I have something to send you . Thanks . 2018 is going to be so excitin*** |

Needless to say, even though Bauman did not welcome these communications, Butowsky inundated him for months on end. Butowsky has even sent two harassing emails to Bauman after this Complaint was filed on May 21, 2018.

| Date | Emails From Butowsky to Bauman (Typos in Original; Emphases Added) |
|---|---|
| 5/22/2018 (12:48 P.M.) | A and r merchandise research June 23 2016<br><br>So much more..ready to play?<br>Sent from my iPad |
| 5/31/2018 (8:02 A.M.) | You need to prep your attack journalists better prior to call me.<br>I know you want more publicity for your case but the nice lady from salon didnt know anything about the case . She didnt even know about the wigdor wheeler case. She seems nice but you should prep her more<br><br>https://vimeo.com/270024109<br>Sent from my iPad |

Since nearly a year ago, Butowsky has targeted at least ten (10) comments, *i.e.*, the above emails, to Bauman in the District of Columbia, several of which also establish Butowsky's

10

physical presence in D.C. Butowsky's month's long targeting of harassing and intimidating comments towards Bauman in the District of Columbia easily satisfies Section 13-423(a)(4)'s "persistent course of conduct" rule. *See Steinberg*, 672 F.3d at 931 (jurisdiction proper where defendant attended meetings in D.C. and communicated with a D.C. liaison to whom it "regularly sends information"); *Chambers*, 2011 WL 3512140, at *4 (jurisdiction proper where defendants "created blogs, posted comments on websites, and sent emails to [jurisdiction's] residents … to defame Plaintiff").

### 3. Butowsky transacted business in D.C.

Jurisdiction is also proper because Butowsky transacted business in D.C. under the "transacting any business" provision of D.C.'s long-arm statute. D.C. Code Ann. § 13-423(a)(1). Under § 13-423(a)(1), even "a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here." *Shoppers Food,* 746 A.2d at 326. "Business" is "not necessarily limited to acts which are part of commerce or of transactions for profit, but include acts which constitute purposeful activity within the state." *See Novack v. Nat'l Hot Rod Ass'n,* 231 A.2d 22, 26 (Md. 1967), *cited with approval in* in *Steinberg,* 672 F.2d at 931 n.7 (emphasis added); *see also Family Fed'n for World Peace v. Hyun Jin Moon,* 129 A.3d 234, 242 (D.C. 2015) (under D.C. law, a non-resident, non-profit defendant need not have operated a for-profit enterprise within D.C. in order to have transacted "any business" for purposes of the long-arm statute). Rather, as long as the defendant's activity is related to the plaintiff's claim, the inquiry under § 13-423(a)(l) is whether the defendant engaged in *any* transaction of business in D.C. The D.C. Court of Appeals has explained that:

> the sweep of the 'transacting any business' provision . . . *covers any transaction of business in the District of Columbia that can be reached jurisdictionally*

> *without offending the due process clause.* Thus, to determine whether the statute can reach the conduct at issue, we must consider whether appellees had sufficient contacts with the District such that the assertion of personal jurisdiction comports with due process.

*Mouzavires v. Baxter,* 434 A.2d 988, 993 (D.C. 1981) (emphasis added); *see also Heroes, Inc. v. Heroes Found.,* 958 F. Supp. 1, 2 (D.D.C. 1996) ("The 'transacting any business' clause of the District's long-arm statute provides jurisdiction to the full extent allowed by the Due Process Clause."). When analyzing jurisdiction under § 13-423(a)(l), courts look to whether the defendant's "contacts are voluntary and deliberate or only random, fortuitous, tenuous and accidental," *Shoppers Food,* 746 A.2d at 329, and "must consider the 'quality and nature'" of the defendant's contacts with D.C. *Manifold,* 231 F. Supp. 2d at 62.

Bauman's claims arise directly from Butowsky's decision to voluntarily, intentionally, and directly transact business in D.C. *See Rundquist,* 2012 WL 5954706, at *8 (finding a "discernable relationship" between the plaintiff s copyright infringement claims and the defendant's role in controlling the work of the D.C. architect and sending employees into D.C. because a "claim only fails to have a 'discernible relationship' when it is 'unrelated to the acts forming the basis for personal jurisdiction'"). Butowsky agreed to "foot the bill" for Wheeler's "investigation" into Seth Rich's murder for the specific purpose of advancing the D.C.-centered narrative at the heart of this matter—namely, accusing the DNC of being involved in Seth Rich's murder and Bauman of conspiring with them to conceal the DNC's efforts by obstructing the murder investigation in D.C. and lying to the public in D.C., *i.e.*, committing crimes in D.C. that would be enforceable under the laws of the District. Compl. ¶¶ 49; 51. The investigation was conducted in D.C. by a retired D.C. police officer holding himself out as a D.C. private detective. Butowsky provided false and defamatory information, and indeed spearheaded the entire narrative, about Bauman to at least five different media outlets that write and cover D.C.—Fox

News, World Net Daily, New York Magazine, Big League Politics, and CNN—to encourage the dissemination of false and defamatory statements about Bauman. Compl. ¶¶ 31; 52; 56; 72-75. Bauman's claims are directly related to Butowsky's conduct in D.C. because Butowsky purposefully reached into D.C. to conduct business with an investigator and encourage publication of content that directly defamed Bauman, including D.C.-based publications.

This case falls squarely in the middle of cases in which courts have exercised jurisdiction over non-resident defendants. For instance, in *Calder v. Jones,* the Supreme Court—using the same test this Circuit applies in 13-423(a)(1) cases—held that a California court properly asserted jurisdiction consistent with Due Process over defendants in connection with a publication that "impugned the professionalism of an entertainer whose television career was centered in California." 465 U.S. 783, 788-789 (1984). The *Calder* Court reasoned that the Florida defendants could "reasonably anticipate being haled into court [in California] to answer for the truth of the statements" because California was the "focal point" of the defamatory article and the defendant's "intentional, and allegedly tortious, actions were expressly aimed at California" and "would have a potentially devastating impact" on the plaintiff in California. *Id.* at 788-90. The Court explained: "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly caused the injury in California." *Id.* at 790.[5] This is especially so where, as here and in *Calder*, D.C. is the locus of

---

[5] *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) (New Hampshire court could assert personal jurisdiction over non-resident defendant that circulated copies of a defamatory magazine article in the forum); *Steinberg,* 672 F.2d at 932 (concurring, Wright, J.) (Section 13-423(a)(l)'s "broad reach" covers defendant's "constant communications" with an organization in D.C. and "in particular from appellee's alleged publication of a defamatory notice in the District"); *see also Dooley v. United Techs. Corp.,* 786 F. Supp. 65, 72 (D.C. Cir. 2008) (finding jurisdiction where defendants "sought out" a D.C.-based entity "to become the conduit" for one of the acts at issue in the litigation); *Heroes.,* 958 F. Supp. at 3 (finding jurisdiction where defendant approved and "specifically" placed content alleged to have infringed on the plaintiff s

13

the all the events giving rise to Butowsky's defamatory statements and conspiracy narratives and where Bauman lives. The DNC is located in D.C. Seth Rich was murdered in D.C. Butowsky and the various media outlets through which he made defamatory statements are focused on national, federal politics in D.C.

Butowsky's actions—like the defendant's in *Calder*—were purposefully and expressly aimed at D.C. such that Butowsky should have, and very well could have, anticipated being haled into court in D.C. to defendant the truth of his statements causing injury in D.C. *Id.* at 788-89. Bauman need not, and indeed should not, go all the way to Texas to seek redress for injury Butowsky purposefully brought about in D.C. *Id.* at 790. Having accused Bauman of committing crimes in D.C., and pushing media outlets to publish defamatory statements about Bauman, Butowsky is subject to jurisdiction under 13-423(a)(1).

### 4. Alternatively, jurisdictional discovery is warranted.

Even if this Court finds that it does not currently have jurisdiction, dismissal of the action would nevertheless be inappropriate because the Complaint has "pointed to links" between Butowsky and D.C. "sufficient at least to permit further inquiry regarding personal jurisdiction, so that the statutory and constitutional questions can be resolved on a fuller record." *Crane,* 814

---

trademarks in a forum's local newspaper); *Stabilisierungsfonds Fur Wein et al. v. Kaiser,* 647 F.2d 200, 205 (D.C. Cir. 1981) (finding jurisdiction "where a nonresident defendant ships goods to an intermediary with the expectation that the intermediary will distribute the goods in a region that includes the District of Columbia" even if the defendant has no direct contacts with the forum); *Manifold,* 231 F. Supp. 2d at 62 (finding jurisdiction where the defendant's "single act" in D.C. of negotiating the sale of a van into the district constituted transacting business); *Shoppers Food,* 746 A.2d at 331 Jurisdiction where defendant "purposefully direct[ed] advertisements for its Maryland and Virginia stores at a potential customer base in the District of Columbia"); *Massey Energy Co. v. United Mine Workers,* No. 2005-3632, 2005 WL 3476771, at *7 (Cir. Ct. Fairfax, Cty., Va. Oct. 4, 2005) (defendants "must have foreseen the possibility that they would be haled into a Virginia court" by having "caused a defamatory advertisement to be broadcast into the Commonwealth via a television station that regularly broadcast into the Commonwealth").

F.2d at 760 (vacating the district court's dismissal because it provided "no opportunity for

discovery on the issue of personal jurisdiction"); *see also Gorman,* 293 F.3d at 513 ("Because

the plaintiff has 'demonstrate[d] that it can supplement its jurisdictional allegations through

discovery, . . . jurisdictional discovery is justified' and should have been afforded."); *Rochon,*

691 F. Supp. at 1560 (permitting jurisdictional discovery where there is support for finding that

proper jurisdiction "may lie" in D.C. to more "precisely tie each defendant to actions within"

D.C.); *Messina v. Fontana*, 260 F. Supp. 2d 173, 180 (D.D.C. 2003) (ordering jurisdictional

discovery in defamation case where there was factual dispute concerning defendants' contacts

with D.C. under the long-arm statute), *aff'd sub nom. Messina v. Krakower*, 439 F.3d 755 (D.C.

Cir. 2006).

  Jurisdictional discovery in this matter would be focused and targeted narrowly at

generating evidence directly related to Butowksy's contacts with D.C. Bauman submits that

jurisdictional discovery would be likely to show that Butowsky has intentionally and persistently

reached into D.C. for years, including transacting business in D.C. Such supporting evidence

would be likely to include: emails from Butowsky repeatedly attempting to arrange meetings in

D.C. with members of the Rich family and related acquaintances; social media postings showing

Butowsky's presence in D.C.; and testimony reflecting attempts by Butowsky while in D.C. to

force meetings with individuals in D.C. related to the issues of this litigation. Moreover, the

factual allegations made in Aaron Rich's suit against Butowsky provide evidence that the

assertions made in Bauman's complaint are just the tip of the iceberg. Additional allegations

from Aaron Rich's suit against Butowsky, Couch, and AFM include:

- Butowsky personally arranged and attended multiple meetings with Wheeler in
  D.C. for purpose of advancing same D.C.-centric conspiracy narrative. *Rich v.
  Butowsky, et. al.*, Rich's Memorandum In Opposition to Defendants' Motions to
  Dismiss, pg. 4.

- Butowsky arranged and attended meeting with Wheeler and then-White House Press Secretary Sean Spicer on April 20, 2017 for purpose of advancing same D.C.-centric conspiracy narrative. *Id.*

- Butowsky arranged and attended meeting with Wheeler and Fox News reporter in D.C. on February 28, 2017 for purpose of advancing same D.C.-centric conspiracy narrative. *Id.*

- Counsel for Butowsky admitting that Butowsky "intermediary" and "helped facilitate" communication between Mr. Wheeler and author of now-retracted story, which included a meeting in DC in February 2017. *Id.*

- Butowsky communicating with The Washington Times leading up to publication of March 2018 Times' article. *Id.* at 5.

- Butowsky communicating with Cassandra Fairbanks, author of D.C. gossip for several publications and has confirmed that Butowsky is her source for stories relating to Seth Rich's murder. *Id.*

### B.     Bauman Has Pleaded Defamation Against Butowsky

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint "need not provide detailed factual allegations" but rather must simply allege facts sufficient "to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 n.1 (2002). A plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"[T]o state a claim of defamation, [a] plaintiff must allege and prove four elements: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the

plaintiff special harm." *Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009). Bauman's Complaint satisfies all these elements.

### 1.     Butowsky made false and defamatory statements about Bauman

The D.C. Court of Appeals has held that to be actionable statements must be both false and defamatory. *Rosen v. Am. Israel Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012). A statement is defamatory when it tends "to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community" can be defamatory. *Id.*

Bauman works in politics and lives and works in D.C. He is a public relations consultant working in the political sphere. He volunteered to help the family of Seth Rich navigate the toxic conspiratorial reports about Seth's murder. The conspiracy narratives went something like this: Seth Rich leaked DNC emails to Wikileaks because he had uncovered criminal activity at high levels of the organization; the DNC retaliated by having him killed; Bauman was a hired DNC hitman assigned by the DNC to the Rich family to cover up the murder; and Bauman manipulated the Rich family, orchestrating a scheme to cover up the murder and obstruct the investigation. Compl. ¶ 4. Understanding this backdrop is critical to placing Butowsky's statements and actions in context.

Then, along comes Butowsky. He hires Wheeler. He conveys information to Fox News that Wheeler purportedly told him, which turns out to have been invented by Butowsky. When Bauman chastises Butowsky for his fabulism, Butowsky lashes out. As explained in more detail above, Butowsky makes the following statements, all of which are false: the DNC "assigned" Bauman to help the Rich Family (Compl. ¶ 53); Bauman dissuaded the Rich Family from pursuing the Wheeler investigation (*id.*); Bauman was assigned to the Rich Family as part of the DNC's efforts to cover-up Seth Rich's murder and

obstruct justice (*id.*); Bauman "crafted a lie" about the murder (*id.* ¶¶ 73-75). All of these statements are false. And since that time, Butowsky has pursued a months-long campaign of intimidation by email, *see* Part III.A.2.b, *supra*, (table of emails), even going so far as to harass Bauman after this case commenced.

Bauman has never worked for the DNC. Compl. ¶ 28. The DNC did not assign Bauman to work with Riches. *Id.* Bauman has not dissuaded the Rich Family from anything. And there is no cover-up or obstruction of justice, as law enforcement and the Rich Family have repeatedly explained. Butowsky made it all up with the clear implication being that Bauman was working at the behest of the DNC to cover up the murder of Seth Rich. Butowsky exploited a family tragedy for personal, political reasons. He is a stranger to truth and decency.

**Conspiracy to Obstruct Justice.** Butowsky statements are reasonably understood to state that Bauman engaged in a criminal conspiracy with the DNC and other shadowy unknown persons, where the object of the conspiracy was the DNC's alleged conspiracy to obstruct the murder investigation of Seth Rich, and Bauman furthered the conspiracy by corruptly persuading the victim's parents to abandon their investigation as it was beginning to yield results and by lying to the public and crafting a cover story to advance the DNC's murderous agenda. In interviews before national audiences:

- Butowsky stated "the DNC assigned" Bauman to the Rich family (Compl. ¶ 53);

- Butowsky stated the Rich family was supportive of Butowsky's and Wheeler's investigation prior to Bauman's assignment such that the Rich family "commended detective Wheeler for uncovering new information related to Rich's murder" the day before Bauman was "assigned" to the family by the "DNC," but that the Rich family's "tone changed" "after Bauman intervened," stating that the family's entire attitude towards trying to learn the truth "changed" once "Brad Bauman" was "assigned" to the family (Compl. ¶ 53);

18

- Butowsky stated that Bauman's role was extremely suspicious and potentially prevented the exposure of the DNC's involvement in an ongoing conspiracy to obstruct the murder investigation (Compl. ¶ 53);

- Butowsky stated that if Joel Rich "doesn't stand up and tell the truth" about the DNC's alleged conspiracy with Bauman and others to obstruct the Seth Rich murder investigation," then he too was "complicit in keeping this Russian lie, apparently, alive" (Compl. ¶ 53);

- Butowsky stated that notwithstanding Bauman's denial that he was being paid by the DNC, Bauman's "job is to just discredit and try to go after people," in context meaning people who were interested in reporting information concerning Seth Rich's murder to law enforcement (Compl. ¶ 56);

- Butowsky stated that "Bauman is simply a hired guy who will say anything," which statement in context carried the direct implication that Bauman would "say anything" his shadowy unidentified paymasters requested (Compl. ¶ 74); and

- Butowsky stated that there was "absolutely no reason" for him to apologize to the Rich family because "I haven't done anything to the Rich family. Quite frankly, Brad Bauman should apologize to the country for *crafting a lie*," i.e., Bauman's alleged role as a co-conspirator in the effort to obstruct the murder investigation or conceal the true nature of Seth Rich's murder (Compl. ¶ 74).

In context, Butowsky's statements above can reasonably be understood to assert that "the DNC assigned" Bauman to the Rich family for the purpose of corruptly inducing the Rich family into backing away from an investigation of their son's murder just as it was beginning to bear fruit, that Bauman understood this was the task but was "complicit" in the scheme, would "say anything" his implied DNC paymasters asked him to say, caused the "tone" of the Rich family's interest in finding out what happened to their son to "change[]" after being "assigned" to the Rich family by the DNC, and that Bauman had acted in furtherance of this conspiracy by "crafting a lie" concerning Seth Rich's murder that had been so widely communicated and done so much damage that Bauman "should apologize to the country."

Butowsky's statements can reasonably be understood to state that Bauman was a participant in a criminal conspiracy to obstruct justice in violation of D.C. Code § 22-1805a

19

(felony crime where "2 or more persons either to commit a criminal offense or to defraud the District of Columbia or any court or agency thereof in any manner or for any purpose") & D.C. Code § 22–722 (obstruction), which provides that "[a] person commits the offense of obstruction of justice if that person," among other things, "(3) Harasses another person with the intent to hinder, delay, prevent, or dissuade the person from: … (B) Reporting to a law enforcement officer … any information concerning [] a criminal offense; [or] (C) … seeking the arrest of another person in connection with the commission of a criminal offense; [or] (6) Corruptly … obstructs or impedes or endeavors to obstruct or impede the due administration of justice in any official proceeding." Butowsky's above statements concerning Bauman satisfy the elements of obstruction under D.C. Code §§ 22–722(3)(B), (3)(C), & (6), and constitute defamation *per se*. Compl. ¶¶ 53; 56; 74-75; 129.

Butowsky's statements can also reasonably be understood to state that Bauman was a participant in a criminal conspiracy to obstruct justice in violation of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 1512(b) (obstruction by intimidation, threats, persuasion, or deception), and 18 U.S.C. § 1512(d) (obstruction by harassment). *See, e.g., United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996) (holding that a defendant's attempt to "influence" an anticipated witness's views on matters that could be the subject of testimony in an anticipated proceeding is criminal obstruction in violation of 18 U.S.C. § 1512(b)). Under settled D.C. Circuit law, Butowsky's statement that Bauman was responsible for "crafting a lie" that was shared with the "country," directly accuses Bauman of taking an act in furtherance of an obstruction conspiracy. As the D.C. Circuit held, the iconic Watergate conspiracy

> required the coordination and control of a large number of individuals who had
> knowledge of the events that were being covered up. It also required the
> conspirators to make regular strategic decisions on how best to proceed to prevent
> the full story of "Watergate" from becoming known to the press, prosecutors,

20

> Congress, and the public. … In a conspiracy in which consideration of alternative strategies played so central a role, statements which narrate past events are not necessarily "mere narratives" in the usual sense of that phrase. Rather, they can constitute activity that is plainly and importantly "in furtherance of" a conspiracy … The evidence of Mitchell's participation in the conspiracy … [included] [a] false press release … [and creation of a] "cover story."

*United States v. Haldeman*, 559 F.2d 31, 110-12 (D.C. Cir. 1976). Butowsky's statements about Bauman satisfy the elements of conspiracy to obstruct justice in violation of 18 U.S.C. §§ 371; 1512(b); & 1512(d) and constitute defamation *per se*. Compl. ¶¶ 53; 56; 74-75; 129.

**Misprision of Felony.** Based on Butowsky's same statements above, a reasonable factfinder could conclude that Butowsky stated that Bauman engaged in conduct that would constitute the crime of misprision of felony. *See* D.C. Code § 5-121.05; *Butler v. United States*, 481 A.2d 431, 444-45 (D.C. 1984) ("If we assume … that Abdul-Mani had knowledge of Belfield's participation in the assassination, the evidence might support a charge of misprision of felony. This offense makes unlawful the aiding or assisting of any person suspected of crime to escape full judicial examination by the withholding of any information about a felony or other unlawful act."); *see also* 18 U.S.C. § 4 (federal crime); *United States v. Cefalu*, 85 F.3d 964, 969 (2d Cir. 1996) ("The elements of Misprision of Felony are (1) the principal committed and completed the alleged felony; (2) defendant had full knowledge of that fact; (3) defendant failed to notify the authorities; and (4) defendant took steps to conceal the crime."). Butowsky's statements concerning Bauman satisfy the elements of the D.C. and federal crimes of misprision of felony, D.C. Code § 5-121.05 and 18 U.S.C. § 4, respectively, and are defamation *per se*. Compl. ¶¶ 53; 74-75; 129.

Accusing a person in public relations of crafting lies and obstructing justice necessarily impugns their character and profession. The statements were intended to directly link Bauman to the DNC, which had been accused by various fringe groups of actively covering up the murder

21

of Seth Rich. There can be no serious dispute that these statements tend to injure the plaintiff in his profession by indicating that he lacks knowledge, skill, honesty, character, and integrity and would constitute defamation and are actionable as a matter of law. *See Williams v. District of Columbia*, 9 A.3d 484, 491-93 (D.C. 2010) (where complaint alleged that defendant published defamatory statement that plaintiff was "terminated for embezzlement" and "initiated a false rumor about" plaintiff stated a claim for defamation under D.C. law).

At a minimum, Butowsky's statements could reasonably be understood to defame Bauman, and thus his motion to dismiss must fail. (Notably, any factual denials made by Butowsky must be disregarded on a motion to dismiss.) *See Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 15-18 (D.D.C. 2010) (holding that plaintiff alleged defamation by implication where defendant's statements implied that plaintiff, a teacher, posed a danger to others in light of her marriage to a sex-offender husband, and denying motion to dismiss); *cf. Sprague v. Am. Bar Ass'n,* 276 F. Supp. 2d 365, 377–78 (E.D. Pa. 2003) (holding that term "fixer" was capable of defamatory meaning that could satisfy malice standard, allegation that plaintiff (a lawyer) was a "fixer" presented fact question for jury as to defamatory meaning, and denying motion to for summary judgment).

Butowsky attempts to downplay the effect of his statements by suggesting that Bauman should be thanking him for raising his profile instead of suing him. (ECF 12 at 6.) Butowsky also suggests that he said nothing wrong because he views it as the role of a person employed like Bauman to go after and discredit others. *Id.* Whatever Butowsky's views of the role of spokesperson and his unfamiliarity with truth, truth and facts are important to many people. So is reputation. Accusing a person of obstructing justice and crafting lies are no small things. They are defamation.

2.      **Butowsky's statements were without privilege to a third party**

Butowsky does not argue that he made the statements under any type of immunity or privilege. And it is beyond dispute that Butowsky made the statements about Bauman that are the subject of this defamation action to third parties such as Fox News, World Net Daily, New York Magazine's Daily Intelligencer, CNN, and others. Compl. ¶¶ 32-36, 49, 52, 55, 73. Butowsky made his statements in public settings and these statements remain available to the public on the internet as the citations of these sources in the Complaint demonstrates.

3.      **Butowsky's statements were made without any basis in fact.**

As noted above:

- Bauman has never worked for the DNC. Compl. ¶ 28. Butowsky could easily have confirmed as much, but did not;

- Bauman was not assigned by the DNC to work with the Rich Family. *Id.* Butowsky could easily have confirmed as much, but did not;

- Butowsky falsely attributed statements to Wheeler. *Id.* ¶¶ 48-49; and

- Butowsky accused Bauman of being part of a DNC conspiracy to obstruct justice even though law enforcement had repeatedly stated the murder was a tragic accident from a botched robbery, the Rich Family denied any links to WikiLeaks, and Fox News retracted its story based on Butowsky's fabrications. *Id.* ¶¶ 2, 43, 46-47.

In sum, it is evident that Butowsky's statements are based on sheer speculation, falsehoods, and have been made negligently, if not recklessly.

4.      **Butowsky's statements were defamation per se and therefore actionable as a matter of law irrespective of special harm, but even so plaintiff has sufficiently alleged special harm.**

In the District of Columbia, statements that falsely accuse someone of committing a crime constitute defamation *per se*. *See Raboya v. Shrybman & Assocs.*, 777 F. Supp. 58 (D.D.C. 1991). In instances of statements that qualify as defamation *per se*, a court will assume harm to the plaintiff's reputation, without further need to prove that harm. *Id.* at 60.

23

Butowsky has clearly accused Bauman of serious crimes. He has painted Bauman as a DNC apparatchik paid to obstruct justice and impede a murder investigation. These statements are defamation *per se*. *See, e.g., Raboya v. Shrybman & Assocs.*, 777 F. Supp. 58, (D.D.C. 1991) (noting that for defamation per se the statement "'impute . . . the commission of some criminal offense for which [the Plaintiff] may be indicted and punished, if the charge involves moral turpitude and is such as will injuriously affect [the Plaintiff's] social standing', or, . . . the question is whether, from the language attributed to defendant, there is something from which commission of a crime can be inferred.") (citations omitted); *Ingber v. Ross*, 479 A.2d 1256, 1268 (D.C. 1984) ("Defendants' statements were slander per se because they imputed to Plaintiff "a lack of knowledge and skill in dentistry and a lack of honesty, character and integrity which tended to injure [plaintiff's] reputation in the community and were calculated to cause harm to [plaintiff's] reputation") (citations omitted).

Here, as noted in Part III.B.5, *infra*, Bauman is a private figure for purposes of evaluating Butowsky's statements because there is no "public controversy." To the extent the Court requires a showing of "special harm," Bauman has adequately plead such harm. He has alleged that Butowsky's statements have "negatively affected Bauman's professional reputation and ability to attract new clients as, among other things, as on-the-record spokesperson, and further limited the scope of responsibilities and on-the-record duties he has been able to continue or undertake for existing clients, as well as caused him severe emotional distress." Compl. ¶ 51. For purposes of this early stage of the litigation, this satisfies Bauman's obligation to "allege some specific harm and the actual pecuniary loss arising from that harm." *Xereas v. Heiss*, 933 F. Supp. 2d 1, 19 (D.D.C. 2013). This is more than "[s]imply asserting the risk of future harm." *Id.*

## 5.  Bauman is not a limited purpose public figure.

Putting aside the elements of defamation, Butowsky argues that Bauman is a "limited-

purpose public figure," meaning that Bauman must plead actual malice, which, Butowsky

argues, he has not done. (ECF 12. at 6.) In *Abbas v. Foreign Policy Group, LLC*, 975 F. Supp. 2d

1 (D.D.C. 2013), the court identified "two types of public figures: 'general purpose and limited

purpose public figures.'" *Id.* at 11 (quoting *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir.

1987) (*en banc*)). But the limited-purpose public figure analysis, and commensurate actual

malice standard, applies only where the defamatory comments arise from a genuine "public

controversy." As explained in detail in Bauman's opposition to Defendant Heavin's motion to

dismiss, the controversy was manufactured and kept alive by Butowsky and others long after any

credible media outlet had repudiated the conspiracy narratives peddled by Butowsky and his alt-

right friends. Plaintiff hereby expressly incorporates the argument contained in Section III.D.3 of

his opposition to defendant Gary Heavin's motion to dismiss, which is being filed concurrently,

as if fully set forth herein.

 As a threshold matter, the Complaint credibly alleges that Butowsky is a fabulist who

admitted to another that he understood the factual predicate for his odious statements concerning

the alleged Seth Rich murder conspiracy was not true. Compl. ¶ 49 ("Mr. Wheeler alleges that

Defendant Butowsky told him: 'Well I know that's not true ... I've never heard you say that ... If

I'm under oath. I would say I never heard him say that.'"). If a reasonable factfinder concluded

that Butowsky fabricated his story, or that he had doubts about the story but proceeded anyways

(as he allegedly stated to Wheeler), either conclusion would satisfy the actual malice standard in

the event it were to apply. *See, e.g., Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257,

281–84 (D.D.C. 2017) (holding that allegation that defendant fabricated statement or made

statement while entertaining doubts about veracity and failing to investigate satisfies actual

malice); *Schiller v. Viacom, Inc.*, No. 1:15-CV-22129-UU, 2016 WL 9280239, at *7 (S.D. Fla.

Apr. 4, 2016) (holding that evidence that defendants "fabricated" statements, in whole or in part, satisfied actual malice standard and raised question for the jury).

Remember that this "controversy" starts when Butowsky hires Wheeler to "investigate" Seth Rich's murder. Then Butowsky agitates Fox News to run a story on the homicide based on Butowsky's false representations about Wheeler's statements to him—a story that Fox News subsequently retracted when it became apparent it had no basis in fact. No credible media outlet has touched the story since Fox News retracted its piece. The story is being kept alive by Butowsky and others. Butowsky and his friends cannot manufacture a genuine public controversy any more than holocaust deniers can generate a public controversy by simply repeating denials in their echo-chamber. This case presents a classic case of a defendant "bootstrapping" himself into the protection of the actual malice standard by pointing to an alleged "public controversy" where the defendant has manufactured and helped to propel the issue. *See Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) (stating that "[c]learly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.").

## C.    False Light

Bauman concedes that, at the conclusion of this matter, he may not recover damages for his defamation claims (Counts 1 & 3) and his false light claim (Count 4). *See, e.g., Moldea v. N.Y. Times Co.*, 15 F.3d 1137 (D.C. Cir. 1994). But even though "[a] plaintiff may only recover on one of the two narratives based on a single publication, but is free to plead them in the alternative." *Moldea*, 15 F.3d at 1151. For the reasons stated above, plaintiffs' False Light claim should be permitted to proceed.

26

## IV.     CONCLUSION

For the foregoing reasons, plaintiff respectfully requests the Court enter an order denying

Butowsky's motion to dismiss. Finally, irrespective of whether this Court determines that

jurisdictional discovery is appropriate, it should not dismiss the case without first permitting

Plaintiff to amend his Complaint. Fed. R. Civ. P. 15 ("The court should freely give leave" to

amend complaints "when justice so requires."); *Christensson v. Hogdal*, 199 F.2d 402, 406 (D.C.

Cir. 1952) ("The modern rule is liberal in permitting the amendment of pleadings to show that

the court has jurisdiction.").

July 16, 2018                                   Respectfully submitted,

                                                /s/ Gregory Y. Porter
                                                Gregory Y. Porter (D.C. Bar No. 458603)
                                                Michael L. Murphy (D.C. Bar No. 480163)
                                                Bailey Glasser LLP
                                                1054 31st Street, NW, Suite 230
                                                Washington, DC 20007
                                                Tel: (202) 463-2101
                                                Fax: (202) 463-2103
                                                gporter@baileyglasser.com
                                                mmurphy@baileyglasser.com


                                                Ryan R. Sparacino (D.C. Bar No. 493700)
                                                Sparacino & Andreson PLLC
                                                1920 L Street, NW, Suite 535
                                                Washington, D.C. 20036
                                                Tel: (202) 629-3530
                                                Fax: (202) 629-3658
                                                ryan.sparacino@sparacinopllc.com

                                                *Counsel for Plaintiff*

Case 1:18-cv-01191-RJL   Document 23   Filed 07/16/18   Page 34 of 34

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of July, 2018, the foregoing Plaintiff Brad Bauman's Opposition to Defendant Edward Butowsky's Motion to Dismiss was filed via the Court's ECF System.  Notice of this filing will be sent in this action by operation of the Court's electronic system to all counsel of record in the ECF System.


 /s/ *Gregory Y. Porter*
Gregory Y. Porter

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BRAD BAUMAN,**

     Plaintiff,

v.

**EDWARD BUTOWSKY, et al.,**

     Defendants.

Case No. 1:18-CV-1191

### Declaration of Brad Bauman

I, Brad Bauman, declare:

1.    I am the plaintiff in the above-referenced matter.

2.    I make this declaration in support of Plaintiff Brad Bauman's Opposition to Defendant Ed Butwosky's Motion to Dismiss.

3.    If called upon to testify, I could and would competently testify to the matters set forth in this declaration that are personally known to me to be true.

4.    Attached hereto as **Exhibit A** are true and correct copies of email messages I received from Defendant Ed Butkowsky between July 12, 2017 and May 31, 2018.

5.    On May 22, 2018, after this matter was filed, Defendant Ed Butkowsky sent me an unsolicited email stating "So much more..ready to play?" Ex. A, at 3.

*(intentionally left blank)*

1

6.     On May 31, 2018, after this matter was filed, Defendant Ed Butkowsky sent me

an unsolicited email stating "You need to prep your attack journalists better prior to call me. I

know you want more publicity for your case but the nice lady from salon didn't know anything

about the case. She didn't even know about the wigdor wheeler case. She seems nice but you

should prep her more[.]" Ex. A, at 3.

Executed: July 16, 2018

Brad Bauman

7/16/2018

Case 1:18-cv-01191-RJL   Document 23-1   Filed 07/16/18   Page 3 of 5

Gmail - Brad, we are still looking forward to our get together. You never seem to be around.

 Gmail

Brad Bauman <brad.m.bauman@gmail.com>

## Please ask Brad what time I can drop by his office on Tuesday.or Lunch? This is Ed Butowsky my cell is 972.897.0197

Ed Butowsky <ebutowsky@gmail.com>                                    Mon, Jun 12, 2017 at 4:58 PM To:
info@thepastorumgroup.com, brad@thepastorumgroup.com

## Brad, we are still looking forward to our get together. You never seem to be around.

ebutowsky@gmail.com <ebutowsky@gmail.com>                         Thu, Aug 17, 2017 at 8:53 PM
To: brad.m.bauman@gmail.com

Please let me know as soon as possible when you are available. When Joel and Mary Rich told me their " secret" he let
me know that you were well informed about what Aaron and Seth had done and he told me you were "hired" by the DNC
to keep it a secret from " the world " So much for you and I to catch up on.

Breakfast , lunch or dinner . Your choice. Have a great night .

Your buddy,
Ed

Ps.

No need to have an attorney call me. It really doesn't further our needed dialogue.

## From Ed Butowsky

ebutowsky@gmail.com <ebutowsky@gmail.com>                         Fri, Aug 18, 2017 at 10:18 PM
To: brad.m.bauman@gmail.com

I received your email tonight .
When can we visit?
My friends and I have so so many questions that just keep piling up.

What's your schedule tomorrow ?
Open for lunch ? Or how about brunch on Sunday ?

You name it.

We have so much to catch up on and workout.

Your buddy ,

Ed Butowsky

## Rule 11 Motion and Exhibits

PLAINTIFF'S
EXHIBIT
A
tabbies

ed butowsky <ebutowsky@gmail.com>                               Mon, Sep 25, 2017 at 7:43 PM
To: info@thepastorumgroup.com, brad@thepastorumgroup.com

I look forward to meeting you soon. Perhaps we can grab lunch this week. We have a lot to discuss.

2 attachments

**Memorandum of Law in Support of Motion for Sanctions.pdf**
670K

Rule 11 Declaration and Exhibits_Stamped Version.pdf
7403K

---

## I am in DC for a few days. Which day works for lunch? I am buying . 972.897.0197

---

ebutowsky@gmail.com <ebutowsky@gmail.com>                                 Sun, Oct 22, 2017 at 3:52 PM
To: brad.m.bauman@gmail.com

---

## Where do you want to meet for lunch? We have a lot to discuss? 972.897.0197

---

ebutowsky@gmail.com <ebutowsky@gmail.com>                                 Tue, Oct 24, 2017 at 11:26 AM
To: brad.m.bauman@gmail.com

---

## Great news. I will be in Washington on Friday. Let's grab breakfast.

---

ebutowsky@gmail.com <ebutowsky@gmail.com>                                 Wed, Nov 29, 2017 at 7:01 PM
To: brad.m.bauman@gmail.com

Does that work for you ?

I feel like you are avoiding me ... am I reading things correctly ?

---

## I am here. Want to meet up somewhere? Let's chat

---

ebutowsky@gmail.com <ebutowsky@gmail.com>                                 Thu, Nov 30, 2017 at 5:05 PM
To: brad.m.bauman@gmail.com

---

## Brad , let's meet up . Where are you ? Is there a Starbucks nearby ?

---

ebutowsky@gmail.com <ebutowsky@gmail.com>                                 Fri, Dec 1, 2017 at 10:08 AM
To: brad.m.bauman@gmail.com

---

## From Ed Butowsky Brad, it's been awhile. Please text me your home address. I have

**something to send you . Thanks . 2018 is going to be so exciting.**

---

**ebutowsky@gmail.com** <ebutowsky@gmail.com>                Tue, Dec 12, 2017 at 9:25 PM
To: brad.m.bauman@gmail.com

## A and r merchandise research June 23 2016

---

**Ed Butowsky** <ebutowsky@gmail.com>                Tue, May 22, 2018 at 12:48 PM
To: brad.m.bauman@gmail.com

So much more..ready to play?

Sent from my iPad

## (no subject)

---

**ed butowsky** <edbutowsky@icloud.com>                Thu, May 31, 2018 at 8:02 AM
To: brad.m.bauman@gmail.com

You need to prep your attack journalists better prior to call me.
I know you want more publicity for your case but the nice lady from salon didnt know anything about the case . She didnt even know about the wigdor wheeler case. She seems nice but you should prep her more

https://vimeo.com/270024109
Sent from my iPad

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRAD BAUMAN,** | |
| Plaintiff, | Case No. 1:18-CV-1191 |
| | Hon. Richard J. Leon |
| v. | |
| **EDWARD BUTOWSKY, et al.,** | |
| Defendants. | |

**[PLAINTIFF'S PROPOSED] ORDER**

For the reasons stated in Plaintiff's Opposition to Defendant Edward Butowsky's Motion to Dismiss, and this Court's memorandum opinion, Defendants Edward Butowsky's Motion to Dismiss is denied.

Date: _____          _____
                               Hon. Richard J. Leon
                               United States District Court
                               for the District of Columbia.

i