## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRAD BAUMAN**, | |
| Plaintiff, | Case No. 1:18-CV-1191 |
| v. | Hon. Richard J. Leon |
| **EDWARD BUTOWSKY, et al.,** | |
| Defendants. | |

### Rule 26(f) and LCvR 16.3 Report

Pursuant to this Court's Case Management Order of July 5, 2018 (ECF No. 17), Fed. R. Civ. P. 26(f), and LCvR 16.3, Plaintiff Brad Bauman, Defendant Edward Butowsky, Defendant Matthew Couch, Defendant America First Media Group, and Defendant Howard Gary Heavin respectfully submit this joint report outlining the parties' discovery plan, agreements reached between the parties, matters upon which the parties disagree, and proposed scheduling order.

The parties have come to these positions through a series of direct and email communications between and among the various parties. The following people participated in these communications:

- Gregory Porter, Bailey Glasser LLP, on behalf of plaintiff Brad Bauman;

- Michael Murphy, Bailey Glasser LLP, on behalf of plaintiff Brad Bauman;

- Ryan Sparacino, Sparacino & Andreson PLLC, on behalf of plaintiff Brad Bauman;

- Kenneth Martin, The Martin Law Group, on behalf of defendant Edward Butowsky;

1

1057306

- Matthew Couch, Pro Se, on behalf of defendants Matthew Couch and America First Media Group;

- Andrew Grossman, Baker & Hostetler LLP, on behalf of defendant Howard Gary Heavin; and

- Mark Bailen, Baker & Hostetler LLP, on behalf of defendant Howard Gary Heavin.

The parties agree that nothing in this Report constitutes a waiver of any kind, including as to any party's right to propound discovery not described in this Report or as to any objection to any discovery described in this Report.

## I.   STATEMENT OF FACTS AND STATUTORY GROUNDS

Plaintiff Brad Bauman's Statement: Plaintiff's claims arise out of allegedly defamatory statements defendants made about defendant related to the time he served as the Rich family's voluntary spokesperson after their son was murdered in Washington, DC. Plaintiff brought a five-count complaint alleging defamation, defamation *per se*, false light, and publication of private facts. *See* Am. Compl. (ECF No. 18) (July 13, 2018). In sum, plaintiff argues that this Court has personal jurisdiction over each defendant, or should permit jurisdictional discovery, the murder of Seth Rich was not a "public controversy" at the time of each defendant's statements regarding plaintiff, and therefore the actual malice pleading standard is inapplicable to defendants' statements, and, even if it were applicable, plaintiff has satisfied the requisite pleading standard.

Defendant Edward Butowsky's Statement: Defendant Butowsky is a resident of Texas who does not conduct business in the District of Columbia, therefore the Court does not have personal jurisdiction over him. As a matter of law, none of the

statements attributed to Mr. Butowsky are actionable as defamation.

Defendant Gary Heavin's Statement: Defendant Gary Heavin, a Texas resident who spoke about plaintiff on only two occasions, one time from New Mexico and one time from Texas, contends that he lacks sufficient contacts with this jurisdiction for this Court to exercise personal jurisdiction over him. Further, he contends that Plaintiff has failed to state a claim for relief against him for defamation, defamation per se, or false light invasion of privacy. His speech is non-actionable hyperbole and protected opinion, or otherwise lacks defamatory meaning. In addition, Plaintiff is a limited purpose public figure and has failed to sufficiently plead facts that would support a finding that Heavin acted with actual malice. Heavin has requested that the Court apply the D.C. Anti-SLAPP Statute and award him his attorneys' fees for having to defend this action that was brought against him due to his advocacy on a matter of public concern.

## II.   DISCOVERY PLAN

### A.   Proposed Schedule

The parties agree that the Deadline for Joinder of Other Parties and Amendment of Pleadings shall be 21 days after the Court's entry of a scheduling order.

The parties also agree that Rule 26(a)(1) disclosures as should be made consistent with the provisions of the Rule, but differ on when they should be made. Plaintiffs' proposal contemplates initial disclosures being made 30 days after the Court's entry of a scheduling order, while defendants propose that they be made 60

days thereafter.

The parties disagree on the amount of time that will be necessary to complete discovery, and subsequent dates, with plaintiffs proposing 170 days after the entry of the Court's scheduling order to complete discovery and defendants proposing 240 days after the Court's decisions on the pending motions to dismiss. The parties' proposals are summarized as follows:

| Event | Plaintiff | Defendant(s) |
|---|---|---|
| Deadline for Joinder of Other Parties and Amendment of Pleadings | 21 days after entry of the Court's Scheduling Order | 21 days after entry of the Court's Scheduling Order |
| Rule 26(a)(1) Disclosures | 30 days after entry of the Court's Scheduling Order | 60 days after entry of the Court's Scheduling Order |
| Completion of Fact Discovery | 170 days after entry of the Court's Scheduling Order | 240 days after the Court's decisions on the motions to dismiss. |
| Expert Reports (issues on which a party has the burden of proof) | 200 days after entry of the Court's Scheduling Order | 240 days after the Court's decisions on the motions to dismiss. |
| Rebuttal Expert Reports | 230 days after entry of the Court's Scheduling Order | 270 days after the Court's decisions on the motions to dismiss. |
| Expert Depositions Completed | 250 days after entry of the Court's Scheduling Order | 360 days after the Court's decisions on the motions to dismiss. |
| Summary Judgment Motions | 250 days after entry of the Court's Scheduling Order | 290 days after the Court's decisions on the motions to dismiss. |
| Opposition to Summary Judgment Motions | 280 days after entry of the Court's Scheduling Order | 320 days after the Court's decisions on the motions to dismiss. |

| Event | Plaintiff | Defendant(s) |
|---|---|---|
| Reply to Summary Judgment Motions | 300 days after entry of the Court's Scheduling Order | 341 days after the Court's decisions on the motions to dismiss. |
| Pretrial Conference | To be determined by the Court. | To be determined by the Court. |
| Trial | Set by the Court at the Pretrial Conference | Set by the Court at the Pretrial Conference |

Plaintiff's proposed scheduling order is attached hereto as Exhibit A and Defendants' proposed scheduling order is attached hereto as Exhibit B.

### B.    Stay of Discovery

Plaintiff is not opposed to a stay of discovery during the pendency of the motions to dismiss, with one exception: if discovery commences in the matter of *Aaron Rich v. Edward Butowsky, et al.*, No. 1:18-cv-00681-RJL (D.D.C.), plaintiff reserves the right to participate in and seek party and/or non-party discovery (either by consent of the parties or leave of the Court).

Defendants seek a stay of discovery during the pendency of the motions to dismiss and agree with plaintiff's stated exception concerning the taking of party and non-party discovery in the matter of *Aaron Rich v. Edward Butowsky, et al.*

## III.   LOCAL RULE 16.3 MATTERS

The parties hereby report to the Court on the following matters listed in Local Rule 16.3, as follows:

**(1)      Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the Court that discovery or other matters should await a decision on the motion.**

Response: In June 2018, defendants filed their respective motions to dismiss. (ECF Nos. 12, 14, 25 Exs. A-B). Plaintiff opposed these motions on July 16, 2018. (ECF Nos. 23, 24, 25 Ex. C). On August 6, 2018, defendants Butowsky and Heavin filed their reply briefs. (ECF Nos. 29, 30).

As noted above, defendants are requesting a stay of discovery during the pendency of the motions to dismiss and plaintiff does not oppose such a request with one exception. To the extent the Court permits discovery to proceed in the matter of *Aaron Rich v. Butowky, et al.*, plaintiff here may seek to participate in such party or non-party discovery.

**(2)      The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.**

Response: As noted above, the parties agree that the Deadline for Joinder of Other Parties and Amendment of Pleadings shall be 21 days after the Court's entry of a scheduling order, absent modification by stipulation or by the Court for good cause shown. The parties agree that there will be certain factual and/or legal issues that will not be in dispute and will work in good faith to agree upon or narrow and factual and legal issues presented in this case. If such agreements are reached by and among the parties, they will file a stipulation with the Court.

**(3)      Whether the case should be assigned to a magistrate judge for all purposes, including trial.**

<u>Response</u>: The Parties do not oppose assignment to a magistrate judge for discovery issues.

**(4)      Whether there is a realistic possibility of settling the case.**

<u>Response</u>: The parties are amenable to the possibility of a voluntary settlement in this case, but further agree that they are not presently prepared to settle the matter until the motions to dismiss have been ruled on by the Court.

**(5)      Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients.**

<u>Response</u>: The parties would be willing to explore the possibility of participating in ADR at a future date once the motions to dismiss have been ruled on by the Court.

**(6)      Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

<u>Response</u>: As noted above, defendants have moved to dismiss plaintiff's amended complaint and those motions remain pending before this Court.

The parties agree that this case may be resolved by the filing of cross-motions for summary judgment; however, the parties disagree on the likelihood that the case will be disposed of by dispositive motions. Plaintiff

believes that disposing of the case by dispositive motion would only be appropriate after discovery has been completed. Defendants believe that the case should be resolved in their favor on the motions to dismiss, and if not, then on summary judgment.

The parties disagree on the schedule for filing such cross-motions. Plaintiff proposes that the Court set a date for the filing of dispositive motions 250 days after the Court's entry of a scheduling order, while defendants propose that such motions be filed 290 days after the Court's decision on the pending motions to dismiss.

**(7)** **Whether the parties should stipulate to dispense with the initial disclosures required by Fed. R. Civ. P. 26(a)(1), and if not, what if any changes should be made in the scope, form or timing of those disclosures.**

<u>Response</u>: As noted above, the parties also agree to make Rule 26(a)(1) disclosures as required by the Rule but differ on when they should be made. Plaintiff's proposal contemplates initial disclosures being made 30 days after the Court's entry of a scheduling order, while defendants propose that they be made 60 days thereafter.

**(8)** **The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.**

<u>Response</u>: As noted above, the parties disagree on the amount of time that will be necessary to complete discovery. Plaintiff proposal contemplates that discovery can be completed with 170 days after the entry of the Court's

8

scheduling order, while defendants propose discovery can be completed

within 240 days after the Court's decisions on the pending motions.

Defendants believe that the additional time for discovery is needed because

discovery from third parties, such as the DNC, will be necessary.

The parties will continue to discuss whether they can agree on an

appropriate protective order.

**(9) Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.**

<u>Response</u>: The parties are currently unaware of any issues regarding

the disclosure, discovery, or preservation of electronically stored information.

Further, the parties agree they should be preserving relevant information

and all parties represent each is taking appropriate steps to preserve such

information. The parties have reached an agreement on a proposed stipulated

order concerning discovery of electronically stored information ("ESI"). A copy

of the parties' agreement is attached hereto as Exhibit C.

**(10) Any issues about claims of privilege or of protection as trial-preparation materials, including- if the parties agree on a procedure to assert these claims after production- whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.**

<u>Response</u>: The parties have reached an agreement under Fed. R. Evid.

502 concerning the procedure for privileged documents and materials that

have been inadvertently produced. The parties' agreement is contained in

their proposed stipulated order concerning discovery of ESI. *See* Ex. C, ¶ 11.

**(11)    Whether the requirement of exchange of expert witness reports and information pursuant to Fed. R. Civ. P. 26(a)(2), should be modified, and whether and when depositions of experts should occur.**

<u>Response</u>: The parties agree that the exchange of expert witness reports and information should proceed under Fed. R. Civ. P. 26(a)(2) as written.

As noted above, the parties disagree on when expert witness reports should be submitted and when depositions of experts should occur.

Plaintiffs propose that expert witness reports be submitted 200 days after the entry of the Court's scheduling order, rebuttal expert witness reports be submitted 230 days after the entry of the Court's scheduling order, and depositions of experts be completed 250 days after the entry of the Court's scheduling order.

Defendants propose that expert witness reports be submitted 240 days after the Court's decisions on the pending motions, rebuttal expert witness reports be submitted 270 days after the Court's decisions on the pending motions, and depositions of experts be completed 360 days after the Court's decisions on the pending motions.

**(12)    In class actions, appropriate procedures for dealing with Rule 23, Fed. R. Civ. P. proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision.**

<u>Response</u>: Not Applicable.

10

**(13)    Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

<u>Response</u>: The parties do not seek a phased discovery schedule in this matter. Plaintiff does not believe that the trial should be bifurcated. Defendants believe that trial should be bifurcated into liability and damages phases.

**(14)    The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

<u>Response</u>: As noted above, the parties agree to pretrial conference on a date to be determined by the Court.

**(15)    Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

<u>Response</u>: As noted above, the parties agree to a trial date set by the Court at the Pretrial Conference.

**(16)** **Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.**

<u>Response</u>: None.

August 17, 2018

Respectfully submitted,

/s/ *Gregory Y. Porter*
Gregory Y. Porter
(D.C. Bar No. 458603)
Michael L. Murphy
(D.C. Bar No. 480163)
Bailey Glasser LLP
1054 31st Street, NW, Suite 230
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
gporter@baileyglasser.com
mmurphy@baileyglasser.com

*Counsel for Plaintiff*

/s/ *Ryan R. Sparacino*
Ryan R. Sparacino
(D.C. Bar No. 493700)
Sparacino & Andreson PLLC
1920 L Street, NW, Suite 535
Washington, D.C. 20036
Tel: (202) 629-3530
Fax: (202) 629-3658
ryan.sparacino@sparacinopllc.com

*Counsel for Plaintiff*

/s/ *Kenneth A. Martin*
Kenneth A. Martin
The Martin Law Firm
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101
Tel: (703) 918-0350
Ken@martin-lawfirm.com

*Counsel for Defendant Edward Butowsky*

/s/ *Matthew Couch*
Matthew Couch, Pro Se, and as
America First Media, Pro Se
2300 West Ash Street
Rogers, Arkansas 72758
mattcouch@af-mg.com

*Matthew Couch, as his own counsel*
*Matthew Couch as America First*
*Media, as its own counsel*

12

/s/ *Andrew M. Grossman*
Andrew M. Grossman
(D.C. Bar No. 985166)
Mark I. Bailen
(D.C. Bar No. 459623)
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.
Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1697
agrossman@bakerlaw.com
mbailen@bakerlaw.com

*Counsel for Defendant Howard Gary Heavin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>17th</u> day of <u>August</u>, 2018, the foregoing Rule

26(f) and LCvR 16.3 Report and supporting exhibits were filed via the Court's ECF

System. Notice of this filing will be sent in this action by operation of the Court's

electronic system to all counsel of record in the ECF System.

*/s/Gregory Y. Porter*
  Gregory Y. Porter
Bailey Glasser LLP

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BRAD BAUMAN**,

      Plaintiff,

v.

**EDWARD BUTOWSKY, et al.,**

      Defendants.

Case No. 1:18-CV-1191
Hon. Richard J. Leon

### [Plaintiff's Proposed] Scheduling Order

IT IS HEREBY ORDERED that the following Scheduling Order is entered subject to the rights of the parties to modify the schedule by stipulation and the right of any party to request that the Court modify the Scheduling Order for good cause show:

| Event | Plaintiff |
|---|---|
| Deadline for Joinder of Other Parties and Amendment of Pleadings | 21 days after entry of the Court's Scheduling Order |
| Rule 26(a)(1) Disclosures | 30 days after entry of the Court's Scheduling Order |
| Completion of Fact Discovery | 170 days after entry of the Court's Scheduling Order |
| Expert Reports (issues on which a party has the burden of proof) | 200 days after entry of the Court's Scheduling Order |
| Rebuttal Expert Reports | 230 days after entry of the Court's Scheduling Order |
| Expert Depositions Completed | 250 days after entry of the Court's Scheduling Order |
| Summary Judgment Motions | 250 days after entry of the Court's Scheduling Order |



EXHIBIT

A

| Event | Plaintiff |
|-------|-----------|
| Opposition to Summary Judgment Motions | 280 days after entry of the Court's Scheduling Order |
| Reply to Summary Judgment Motions | 300 days after entry of the Court's Scheduling Order |
| Pretrial Conference | To be determined by the Court. |
| Trial | Set by the Court at the Pretrial Conference |

**SO ORDERED**.

_____
The Honorable Richard J. Leon
United States District Judge
United States District Court for the
District of Columbia

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BRAD BAUMAN**,

     Plaintiff,

v.

**EDWARD BUTOWSKY, et al.,**

     Defendants.

Case No. 1:18-CV-1191
Hon. Richard J. Leon

## [Defendants' Proposed] Scheduling Order

IT IS HEREBY ORDERED that the following Scheduling Order is entered subject to the rights of the parties to modify the schedule by stipulation and the right of any party to request that the Court modify the Scheduling Order for good cause show:

| Event | Defendant(s) |
| --- | --- |
| Deadline for Joinder of Other Parties and Amendment of Pleadings | 21 days after entry of the Court's Scheduling Order |
| Rule 26(a)(1) Disclosures | 60 days after entry of the Court's Scheduling Order |
| Completion of Fact Discovery | 240 days after the Court's decisions on the motions to dismiss. |
| Expert Reports (issues on which a party has the burden of proof) | 240 days after the Court's decisions on the motions to dismiss. |
| Rebuttal Expert Reports | 270 days after the Court's decisions on the motions to dismiss. |

1



EXHIBIT

B

| Event | Defendant(s) |
|---|---|
| Expert Depositions Completed | 360 days after the Court's decisions on the motions to dismiss. |
| Summary Judgment Motions | 290 days after the Court's decisions on the motions to dismiss. |
| Opposition to Summary Judgment Motions | 320 days after the Court's decisions on the motions to dismiss. |
| Reply to Summary Judgment Motions | 341 days after the Court's decisions on the motions to dismiss. |
| Pretrial Conference | To be determined by the Court. |
| Trial | Set by the Court at the Pretrial Conference |

**SO ORDERED**.

_____
The Honorable Richard J. Leon
United States District Judge
United States District Court for the
District of Columbia

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**BRAD BAUMAN**,

      Plaintiff,

v.

**EDWARD BUTOWSKY, et al.,**

      Defendants.

Case No. 1:18-CV-1191
Hon. Richard J. Leon

## [PROPOSED] STIPUATED ORDER CONCERNING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Plaintiff Brad Bauman, Defendant Edward Butowsky, Defendant Matthew

Couch, Defendant America First Media Group, and Defendant Howard Gary Heavin

hereby agree that the following procedures shall govern the discovery of

electronically stored information ("ESI") in the above-captioned matter:

1.    This Stipulation and Order ("Order") supplements the Federal Rules of

Civil Procedure and any other applicable orders and rules. It provides standards for

production of other documents to promote a "just, speedy, and inexpensive

determination" of this action, as required by Federal Rule of Civil Procedure 1.

2.    Except as specifically set forth herein, this Order: (a) does not alter or

affect the applicability to this matter of the Federal Rules of Civil Procedure or

Local Rules of this Court; (b) does not address, limit, determine, or affect the

relevance, discoverability, or admissibility of any document or ESI; and (c) does not

alter or affect objections to relevance, discovery, or admissibility available to any

party under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

3.    This Order may be modified by agreement of all parties or by order of



EXHIBIT

C

the Court on motion for good cause.

    4.    The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Federal Rules of Civil Procedure and the Local Rules of this Court.

    5.    The parties have discussed and understand their preservation obligations and needs, and agree that potentially relevant ESI is to be preserved in a proportionate manner.

    6.    Costs will be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26(b). Likewise a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations, as will all other factors that may be considered under Federal Rule of Civil Procedure 26(b).

    7.    To the extent Plaintiff or Defendants identify potentially relevant ESI that is not reasonably accessible pursuant to Rule 26(b)(2)(B), the parties agree that they are not required to preserve, search, review or produce such ESI, provided that the party that has identified what it reasonably believes to constitute such ESI provides reasonable notice to the opposing party. The parties shall meet and confer following such notice. Upon agreement by the parties or a Court order, the party in possession of ESI that is not reasonably accessible shall not be required to preserve, search, review or produce such ESI. The parties agree that the following sources of ESI are not reasonably accessible and have agreed that they need not preserve, search, review, or produce the following:

        a.    Backup media, backup tapes, or other long-term storage media that were created strictly for use as a data back-up or disaster

2

recovery medium provided, however, that all such relevant data shall be preserved if the data cannot be accessed in any other way than the backup media;

b.    Automatically saved versions of documents and temporary data stored in random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system;

c.    Data only accessible by advanced forensic analysis, including deleted, slack, fragmented, shadowed, damaged, or residual data; and Temporary Internet files, history, cache, and cookies;

d.    Data stored on photocopiers, scanners, and fax machines;

e.    Data in metadata fields that are frequently updated automatically, such as last-opened dates; and

f.    Server, system, or network logs.

Each party reserves the right to identify additional categories of ESI that are not reasonably accessible as the litigation progresses.

8.    <u>Custodian names and search methodology</u>. The parties shall meet and confer to reach agreement on a reasonable list of custodians for purposes of collection, review, and production of ESI. In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case. The parties then shall meet and confer to reach agreement on document custodians and also shall meet and confer to reach agreement on the search methodology to be applied, including, but not limited to, any search parameters, search terms, and date restrictions, if necessary. The parties shall meet and confer to reach agreement on the types of data and location of relevant data sources to be collected from each custodian. The parties shall meet and confer about whether it is appropriate to use

3

computer-assisted and/or linguist-assisted review to identify ESI that is potentially responsive to the parties' discovery requests and to filter out ESI that is not subject to discovery. The parties shall make good faith efforts to identify appropriate email custodians and produce email on the agreed upon schedule, but reserve the right to seek email from additional email custodians and search parameters identified through discovery.

9.    Document Productions. The parties agree that responsive documents will be produced on a rolling basis, pursuant to the format specifications set forth below. Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives, through secure file transfer protocols (e.g., SFTP) or similar secure electronic transmission as agreed to by the Parties. The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter. If a producing party encrypts the production, the producing party shall simultaneously send, under separate cover, an explanation of how to decrypt the files.

10.    Production Formats. The parties generally agree to produce responsive, non-privileged documents in either TIFF or native formats (or both) with load files, with specifications for production formats and production of metadata set forth in Exhibit 1 to this [Proposed] Stipulated Order. However, the parties are not obligated to include metadata for any document that does not contain such metadata in the original, if it is not possible to automate the creation

4

of metadata when the document is collected. The parties reserve their rights to object to any request for the creation of metadata for documents that do not contain metadata in the original. The parties agree not to degrade the searchability of documents as part of the document production process.

11. <u>Documents Protected from Discovery</u>.

    a.   <u>Privilege Log</u>. Pursuant to Rule 26 of the Federal Rules of Civil Procedure, the parties will produce logs of documents withheld from production as privileged or subject to work product protection as required Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure. The privilege logs will, at a minimum, include the author of the document, any recipients (i.e. To, CC, or BCC) of the document, the date of the document, the subject line or file name of the document (if not, itself, privileged), the basis for the privilege (e.g., work product, attorney-client), and a brief description of the document, where necessary. A party may leverage output from database technology used to facilitate the document review to aid in creation of its privilege log. When database technology is used, the descriptive information may be provided in the output form received from the database technology. Thus, for example, the recipient of an email may be listed as jsmith@abccorp.com without the need to change the descriptive information to Smith, John. With respect to

descriptive information received from database technology, each

party will honor reasonable and specific requests to provide

additional information to clarify the basis of the privilege

(e.g.jsmith@abccorp.com is attorney John Smith) with regard to

specific issues or documents. If the descriptive information for

any portion of a document family (i.e. parent or child) or for any

portion of an email string makes clear that the document family

or full email string is privileged or protected, the parties will not

be required to separately log each document in the family or

each email in the string. Rather, the party may do a single entry

for the entire document family or email string and include the

entire implicated Bates range in one description in the privilege

log. Each party shall honor reasonable and specific requests for

additional information about the privileged or protected nature

of any items within a document family or email string. With

respect to information generated after the filing of the

complaint, parties are not required to include any such

information in privilege logs.

b.    <u>Waiver</u>. Pursuant to Federal Rule of Evidence 502(d), the

production of a privileged or work-product-protected document

(collectively, a "privileged document"), whether inadvertent or

otherwise, is not a waiver of privilege or protection from

6

discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

c.   <u>Claw Back Procedure</u>. The parties have agreed upon a "claw back" procedure here (and in the Protective Order) and, subject to Court approval, reserve rights to assert privilege as will be provided for in the Protective Order. When a producing party gives notice to receiving Parties that it produced information that is protected from disclosure under the attorney-client privilege, work product doctrine, and/or any other applicable privilege or immunity from disclosure ("Privileged Material"), or the receiving party discovers such production, the production shall not be deemed a waiver of the applicable privilege or protection. The receiving party shall immediately return all copies of such Privileged Material to the producing party and shall not use it for any purpose until further order of the Court. If the receiving party does not challenge the designation, such return must occur within seven (7) business days of receipt of notice or discovery of the production. If a receiving party wishes to challenge the designation, the receiving party must inform

the producing party within seven (7) business days of receipt of notice or discovery of the production, and must file its challenge to the privilege designation with the Court within seven (7) business days of notifying the producing party of its intent to challenge, unless the Parties agree to a longer schedule. The receiving party may maintain a copy of the challenged document solely for the purpose of the privilege challenge until the Court resolves the issue, but may not disclose or otherwise use the document until the Court resolves the issue. The return of any discovery item to the producing party shall not in any way preclude the receiving party from moving the Court for a ruling that the document or thing is not privileged.

August 17, 2018

Respectfully submitted,

/s/ *Gregory Y. Porter*
Gregory Y. Porter
(D.C. Bar No. 458603)
Michael L. Murphy
(D.C. Bar No. 480163)
Bailey Glasser LLP
1054 31st Street, NW, Suite 230
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
gporter@baileyglasser.com
mmurphy@baileyglasser.com

*Counsel for Plaintiff*

/s/ *Ryan R. Sparacino*
Ryan R. Sparacino
(D.C. Bar No. 493700)
Sparacino & Andreson PLLC
1920 L Street, NW, Suite 535
Washington, D.C. 20036
Tel: (202) 629-3530
Fax: (202) 629-3658
ryan.sparacino@sparacinopllc.com

*Counsel for Plaintiff*

/s/ *Kenneth A. Martin*
Kenneth A. Martin
The Martin Law Firm
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101
Tel: (703) 918-0350
Ken@martin-lawfirm.com

*Counsel for Defendant Edward Butowsky*

/s/ *Matthew Couch*
Matthew Couch, Pro Se, and as
America First Media, Pro Se
2300 West Ash Street
Rogers, Arkansas 72758
mattcouch@af-mg.com

*Matthew Couch, as his own counsel*
*Matthew Couch as America First*
*Media, as its own counsel*

/s/ *Andrew M. Grossman*
Andrew M. Grossman
(D.C. Bar No. 985166)
Mark I. Bailen
(D.C. Bar No. 459623)
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.
Suite 1100
Washington, D.C. 20036
Tel: (202) 861-1697
agrossman@bakerlaw.com
mbailen@bakerlaw.com

Counsel for Defendant Howard Gary Heavin

SO ORDERED.

DATED:_____

_____
THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE
United States District Court for the
District of Columbia

## EXHIBIT 1 – PRODUCTION FORMAT REQUESTS

Responsive, non-privileged documents and ESI shall be produced as follows:

**A.      Production Format**

**1.      Native Productions**

Except as specified in this section, all documents may be produced in TIFF format. All spreadsheet files (*e.g.*, Excel), audio, and video files shall be produced in native format to the extent possible. Additionally, any other file types that cannot be converted to TIFF will be produced in native format.

"Native" files refer to electronic files in the same format in which they were originally collected from custodians or other sources. Native file productions shall include metadata (to the extent it exists or is reasonably accessible or available) as set forth in Section B and a single page placeholder TIFF image indicating that the associated file was produced in native form. Each produced native file shall be named with a unique Bates Number (*e.g.*, AR00000001.xls). If the file contains privileged or work product content, the producing party may TIFF the document to redact that content from the document before production and produce the redacted document in TIFF format.

To the extent that any such native files are used in any pretrial motion or proceeding, those files will be referred to by the Bates-number(s) assigned during processing.

**2.      TIFF Productions**

The standards below pertain to TIFF productions.

### a.   Image Production Standard

(1) <u>TIFF Images</u>. Unless otherwise stated in this Order, each document shall be produced in Group IV Tagged Image File Format ("TIFF") regardless of whether such documents are stored by the parties in the ordinary course of business in electronic or hard copy form. Each TIFF image file should be one page and should reflect how the source document would appear if printed to hard copy.

All TIFF images shall be produced in a folder named "IMAGES", which shall contain sub-folders named "0001", "0002", etc. Each sub-folder shall contain no more than 3,000 images. Images from a single document shall not span multiple sub-folders.

(2) <u>Load Files</u>. Document productions shall include Concordance-compatible Load Files, including a Concordance DAT file and an Opticon delimited file, that indicate document breaks of the TIFF images and additional fields as identified in Section B below. All Load and Crossreference files shall be produced in a folder named "DATA."

(3) <u>File Name</u>. Each document image file shall be named with the unique Bates Number of the page of the document in question followed by the file extension "TIFF." File names should not be more than fifteen characters long or contain spaces or underscore symbols.

(4) <u>Document Unitization</u>. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

(5) <u>Color</u>. Documents shall be produced as black and white TIFF images. Upon written request, a party shall produce color documents reasonably necessary to decipher the complete meaning, context, or content of the documents which were originally in color. The requesting party shall specify the requested documents by Bates Number range.

(6) <u>Date and Time Processing</u>. The parties agree to process ESI using an [Eastern] Standard (or Daylight) Time Zone for all data.

**3.     Searchable Text**

In addition to TIFF images and/or Native files, each production will include text files corresponding to the TIFF image or Native files described above.

**a.     Hard Copy Documents**

Hard copy documents shall be scanned using Optical Character Recognition ("OCR") technology and searchable ASCII text (or Unicode text if the text is in a language requiring characters outside of the ASCII character set) files shall be produced. Each file shall be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT."

**b.     Extracted Text or Optical Character Recognition ("OCR") Text for TIFF Images and Native Files**

To the extent practicable, each individual document based on an electronic file shall be accompanied by one corresponding text file with text that is extracted from the electronic file, not generated as an OCR file from the TIFF image(s). The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a language requiring characters outside of the ASCII

3

character set) and shall be named with the unique Bates Number of the first page of the corresponding TIFF document followed by the extension "TXT". Searchable text files corresponding to the TIFF image files for redacted Electronic Documents must include Extracted Text or OCR text only to the extent that it will not disclose redacted information. The production of relevant ESI in searchable, full text format is limited to those forms of ESI that have text (in other words, any non-text formats [*e.g.*, .wav and .jpeg] would not produce any corresponding text files).

All Extracted Text and OCR files shall be produced in a folder named "TEXT." The Concordance load file will contain a link to the extracted text or OCR text file if applicable. The text should not be included in the Concordance .DAT load file.

### 4. Databases

Databases are not included in this Production Protocol, but will be the subject of meet-and-confers as needed.

## B. Metadata Fields

The following corresponding metadata fields, to the extent applicable to a produced electronic document, will be included in a searchable fielded data file, regardless of the production format:

- *BegDoc (Beginning Bates number)
- *EndDoc (Ending Bates number)
- *BegAttach (Begin Attachment(s) Bates number)
- *EndAttach (End Attachment(s) Bates number)

4

- ▪ *PgCount (Page Count)

- ▪ *Type ("P" for parent document; "C" for child document)

- ▪ Document File extension or application

- ▪ Document Date (date sent for e-mails; latest chronologically saved date for electronic documents; MM/DD/YYYY format)

- ▪ Sent Time (e-mails only)

- ▪ Create Date

- ▪ Create Time

- ▪ Author

- ▪ From

- ▪ Recipients (multiple entries separated by "; ")

- ▪ CC (multiple entries separated by "; ")

- ▪ BCC (multiple entries separated by "; ")

- ▪ Subject (for emails)—unless the subject has been redacted

- ▪ Title (for files)—unless the document title has been redacted

- ▪ *Custodian (Last Name, First Name) (multiple entries separated by "; "

- ▪ File Name

- ▪ Modified Date

- ▪ Modified Time

- • *Full Text File Location (the corresponding text file will contain re-OCR'd text if redactions were made)

5

- *Notation of Redaction presence (if applicable; designated with "Redacted")

- *Confidentiality Designation (if applicable)

- DocLink

- MD5 or SHA1 Hash

* If hard copy documents are produced, only these fields of information will be included in the load file.

No party will have any obligation to manually generate information to populate these fields.

### 1.   Redactions

For redacted electronic documents, metadata fields must be produced only to the extent such fields will not disclose redacted information.

### 2.   Redaction of Images

If the parties redact images on grounds of the attorney-client privilege or attorney work product doctrine, these redactions will be listed on a Privilege Log. In the event a document is redacted, the redaction will be marked by either a box that covers the protected text and/or the term "Redacted." The extracted text described above will not be delivered for that document and in place of extracted text, OCR output will be delivered based on the redacted images, to the extent reasonably feasible. The parties agree and understand that redaction requires that a document be produced in TIFF format.

6

### 3. Parent/Child

Parent-child relationships (the association between an attachment and its parent document) should be preserved and appropriately reflected in the metadata. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates Number when compared to its attachment(s).

### 4. Foreign Language Documents

The parties agree that the producing party shall not bear the cost of translating foreign language documents produced in this case. The requesting parties shall bear the burden of any costs associated with the translation of foreign language documents.

## C. De-Duplication of Productions

To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values) reside within a party's ESI data set, each Party may produce only a single copy of a responsive document. Exact duplicate shall mean bit-for-bit identically of the document content. For exact duplicate documents, the Producing Party will produce the metadata described in Section B herein for the produced copy, as well as any such metadata that differs for the duplicate document(s). De-duplication shall be done at the document family level, such that where any exact duplicate documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.

The parties may de-duplicate identical ESI vertically (i.e., by custodian) and horizontally (*i.e.*, globally across custodians). If the Producing Party chooses to de-duplicate horizontally, the Producing Party shall populate the Custodian field listed in Section B herein that identifies each custodian who had the produced document in his or her files.